Case number 24-5544, United States v. Ronnie Goldy. Argument not to exceed 15 minutes per side. Ms. Berente, you may proceed for the appellant. Good morning. Good morning, Your Honors, and may it please the Court, Casey Berente on behalf of Mr. Goldy. I'd like to reserve three minutes for rebuttal. This case was not properly brought in federal court. The government did not prove jurisdiction, especially as it comes to the federal program bribery counts, counts 13 and 14, and the government conflated gratuities with bribery. Briefly, as it goes to the federal program bribery counts, excuse me, the government did not prove that the four counties that Mr. Goldy was a commonwealth attorney of received federal benefits in excess of $10,000. The testimony at trial showed that the commonwealth attorney's office did not have these federal funds. Rather, it was the Kentucky Attorney General's office that received millions of dollars in benefits in order to further criminal investigations, and they had some oversight authority over these commonwealth attorney's offices. So is the commonwealth attorney's office a part of the state attorney general's office? I'm from Michigan, not Kentucky. So are your prosecutors' offices independently funded? Are they subject to the control of the attorney general? Just tell me how it works in Kentucky. So, Your Honor, I also admit I'm not from Kentucky either. I'm from Ohio, but from what I gather, the commonwealth attorney's offices, there are several, and they control certain counties within the state of Kentucky. It does appear that the attorney general has oversight authority over them, but it's not clear that whether they have this oversight authority that they also funded these commonwealth attorney's offices with the required $10,000 of federal benefits. In particular, Doesn't there have to be a nexus between the federal program and the funds? I mean, the Supreme Court in Sobre says no, Justice Thomas dissented, but that was a dissent. The Supreme Court in Fisher did say that there needs to be some kind of nexus, and this court also in United States v. Juarez says that there should be a nexus between the local conduct and the federal benefits in order to make sure that the federal program bribery does not become this general anti-corruption statute under Congress's spending power. And here, like I said, there just wasn't any evidence at trial beyond the Kentucky General's Office receiving millions of dollars in benefits. There was no testimony or specific testimony that Mr. Goldie's office, which he was an agent of four counties, ever received any of these benefits. Didn't a prior commonwealth attorney testify that she was paid by the state? She did, Your Honor. So why isn't that sufficient? I mean, the jury instructions, to which you didn't object, say you have to prove the defendant was an agent of the Commonwealth of Kentucky, and the Commonwealth of Kentucky was a state government that received in any one-year period benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, etc. So those were the jury instructions. So all they had to show was that he was an agent of the Commonwealth of Kentucky, and Kentucky got in one year $10,000 in federal benefits, which seems like every state, of course, gets that. So I guess all local bribery is federal bribery, but you didn't object to this instruction. You're right, Your Honor, and that would put me under a plain error standard. But I believe this would be a plain error because the... But you only argued, even in this court, only raised a sufficiency argument, that there wasn't sufficient evidence to meet this instruction. Right, there wasn't sufficient evidence to prove beyond a reasonable doubt that these counts were properly brought against Mr. Goldie in federal court, that there was a jurisdictional... How can you show plain error if, to this day, we don't know quite exactly how it works? Because, Your Honor, we don't have any nexus between Mr. Goldie's conduct and any federal funds in general. So even if... No, no, we don't on this record, but that doesn't establish plain error because if... The whole point is substantial rights, and if we actually had an opportunity to put evidence on, it might actually show that, even at the local level, they were getting this money. Right, Your Honor, I still think that it's a substantial right at play, because we're talking about he wasn't properly convicted, or these counts weren't properly brought into federal court, because there was never any testimony as to whether... But I don't think plain error is... There's a risk he was improperly convicted. I think plain error is he clearly was improperly convicted, and that's why I think the evidentiary gap is a problem. Right. I still don't think that I'm quite in exactly in plain error territory because of Mr. Goldie's Rule 29 motions that he brought and the way that the government handled those Rule 29 motions. So if we treat this as a preserved sufficiency claim, that's the best case for you. We have testimony. He's a Commonwealth's attorney. He has testimony from the prior Commonwealth's attorney that she got money... She was paid by the state. So couldn't a reasonable jury find that he, being in her position, was an agent of the state? And there's no dispute that the state as a whole got at least $10,000 in federal money. Your Honor, I think you're still asking the jury to infer inferences on inferences, just because this... I want to make sure I'm understanding this. We look at the preserved sufficiency argument through the lens of the instruction actually given, yes? Because that's what Judge Larson was just asking. Correct. Okay, well, then we're just back to where we started, aren't we? I mean, I believe that we still have to look at whether or not that the jurors could reasonably find that $10,000 was connected to Mr. Goldie's conduct. And from what you're asking, it's still asking the jurors to imply through inferences that that was the case here at trial. I just don't see the requirement of a connection between his conduct and the money in the instruction. So maybe you should have objected to the instruction, but you didn't embrace a plain error objection to the instruction on appeal. Correct, Your Honor. I would like to pivot with the time I have remaining into the conflation with gratuities into bribery. Here, the government did not show at trial that this was a quid pro quo agreement between Mr. Goldie and Ms. Helton. What we have are two incidents that occurred in October and May of 2018 where some exchange did occur, but they were not connected to an official act. The first one actually occurred after he had given her gas money. The second one occurred after official acts had already been taken or undertaken. And this is what would be referred to as gratuity. It's something given because of or for an official act, not something that was given intended to influence future official acts or for the official act to be influenced by the exchange. Goldie uses the word, incentives never hurt. I find the word incentives pretty damning on this point. Correct, Your Honor. He does use that, right? But he also is continually through his messages requesting something of value from Ms. Helton, which he is not receiving. This seems to be more in line with United States v. DeMora, which tells us that the generalized hope or even the generalized expectation of receiving something of value is not bribery. Is that a case where they kept doing this? I mean, the repetition. He uses the word incentives. It's not a one-time situation. It's repeating.  Correct. But I think that, Your Honor, we also have to look at, yes, we can have bribery where the public official doesn't hold up their end of the bargain, but we cannot have bribery where the payer doesn't uphold their end of the  If there's nothing being exchanged to influence the individual, then this isn't a corrupt action. Whatever his motivations were in undertaking his official actions, they weren't influenced by any type of exchange, as we see from the evidence and from her own testimony at trial. So I think here we have what are referred to as gratuities rather than  and none of the statutes that Mr. Goldie was convicted under prohibit gratuities. It just seems like a jury question to me. I mean, at the Sittenfeld case, it seems really similar. Just a jury. It's inferences. You could go either way, and that's why we have a jury, and they had to do it beyond a reasonable doubt. Correct, Your Honor. But I think that this isn't exactly a jury question. This is, you know, based on the law. There was no agreement here, right, between the parties. That's the problem. I mean, you don't usually have, you know, let's fill in our handshake. Yeah, I'm only going to do this if you put it in writing. Yeah, I mean, that's probably not a phrase ever uttered in corrupt circles. I'll surely do these bad acts if we have it in writing exactly who's doing what. So that's why I was wondering if it wasn't just a jury question. I think this gets to, again, that the government did not prove any of these elements beyond a reasonable doubt, didn't prove that he was properly brought into federal court, that this was actually bribery and not gratuities. I think that... Was the instruction okay on this front? Yes, Your Honor. There was not any issue with the instruction, but this goes against the weight of the evidence here. The weight of the evidence is that these were, in fact, gratuities, not bribery, and that is confirmed by the messages, which the government heavily relied on, and Ms. Helton's testimony herself, when she admitted that she wasn't sure why Mr. Goley helped her, that she believed it was because he loved her as a friend, and she also believed that Mr. Goley wanted her to believe that he was all-powerful and that he could, quote, hang the moon. These are not... This is not testimony, this is not evidence that shows beyond a reasonable doubt that any type of quid pro quo agreement was occurring between the parties. If Your Honors do not have any further questions for me, I'll reserve the rest of my time for rebuttal. Thank you very much. Mr. Boone. Good morning. Good morning. May it please the Court, Andy Boone on behalf of the United States. I'd like to address the two issues that Ms. Parente just raised first. First of all, whether the agency at issue here was properly federalized under 18 U.S.C. 666. The evidence in this case was that Mr. Goley, as the elected Commonwealth attorney over his judicial circuit, was directly elected by the people, and in that role served as an officer of the Commonwealth of Kentucky. His successor in that position, Ashton McKenzie, testified that the position was an officer of the Commonwealth. There was also evidence that the position was paid out of state funds, as Judge Larson noted. A hundred percent or just in part? It wasn't broken down that specifically, nor did it need to be under the case law. The evidence at trial also established that the Kentucky Attorney General's Office had some oversight responsibilities over the Commonwealth's attorneys, and that the Attorney General's Office received federal funding in excess of $10,000 in the calendar year 2018, which was the year a lot of these official acts occurred. The evidence at trial was the purpose of that federal funding was to augment the state's ability to conduct criminal investigations. That funding came from HHS, right? So presumably that, I mean, we don't know much more about it, but it's for some kind of health care fraud that that's what the funding was for, not just criminal investigations generally. Presumably, and I think your question, Your Honor, I think gets to Ms. Parente's assertion that there needs to be a nexus between the federal funding and the criminal conduct, and the case law is that there isn't. Ms. Parente has cited United States v. Suarez, in which this court held that there need be no nexus between the federal funding and the criminal conduct. The portion of the opinion that she cites actually in that case is the dissenting opinion. The majority in that case declined to extend Fisher to hold that there would need to be a nexus and relied on established law in this circuit, including United States v. Valentine, which I believe is a case from the 90s. Fisher also does not hold that there needs to be a nexus between the federal funds and the criminal conduct. Fisher was concerned with, and this is United States v. Fisher, a Supreme Court case. Fisher was concerned with whether the Medicare payments to a hospital at issue in that case were benefits, as that term is used in 18 United States Code 666. And the issue in that case arose because the court was concerned with ensuring that the payments were not compensation or reimbursement for services provided, similar to what an insurance company would pay to a medical provider, but instead they were actually designed to serve a purpose, to benefit the organization. The court analyzed the Medicare funds and concluded that they were in fact benefits, distinguished them from payments like reimbursements, payments of something for value, such as would be made to like a government contractor. It's the same here. The payments, the federal funding that the AG's office received would be federal benefits because they were paid, again, to augment the state's ability to conduct criminal investigations, not to How would it work? I know this isn't the case or the instructions. I'm just kind of curious how this works. So imagine a county prosecutor, local prosecutors, totally funded locally. That's where they get all their money. But they are agents of the state. They're definitely that, so they fit that. And there is oversight by the state attorney general. So that's all you have. And the state attorney general and the commonwealth or the state generally gets federal funds. Is that enough? Fortunately, that's not the case here. Okay, yeah, I got it. That seems like it couldn't be enough to me. I can't speak to that because we don't have a full record. No, no, it's hypothetical. I'm asking just the hypothetical. It doesn't do anything to this case. I'm just trying to figure out what the government's position would be on that. Well, this is a situation where I think Judge Larson asserted earlier that under some of these principles, all local bribery is federal bribery. And I actually disagree with that statement. I think there are circumstances where local bribery would not be federal bribery. Why? Because what state doesn't get some federal money? For something. Their schools, their roads, their parks. And we're always calling the prosecutor an agent of the state. Well, I think every state would say that. The hypothetical that you posited, Judge Stutton, had the, if I understood it correctly, had the prosecutor 100% funded by local funds and assumed that there is no federal funding anywhere in that. But there is oversight by the AG, which is also true in every state. Correct. The AG would probably get federal money. So in that situation, perhaps the bribe accepted by the locally funded state prosecutor would be prosecutable under 666, but that's not this case. Why don't you say that if the state AG is not the one involved, forget it. I mean, if the state wants to get involved and state AGs can separately prosecute usually, fine. If they do it, then that's fine because they're the ones that got the federal money. But other than that, sorry. I'm not sure I'm understanding your question, Your Honor. So I'm imagining a world in which the state AG has oversight of all these prosecutors. I think that's probably true in most states. The state AGs, I think, probably all get federal money. And I guess I would just say why can't the line be if the state AG is not the one doing the prosecuting, which they can do. They don't do it that often, but they can. But if this is just a local prosecutor, sorry, you can't. You can rely on something else. You can't rely on federal funds, though. Because the federal government, which is funding the state AG and its ability to prosecute criminal conduct, which it does side by side with the local prosecutors, the federal government has an interest in how that money is spent, how that division of labor between the state. Does it matter, though, that this money came from HHS? I mean, this has to be for prosecuting health care fraud or something along those lines. So HHS is like, we want to go after health care fraud. We're going to help local prosecutors do that. And then he takes a bribe with respect to health care fraud. He's not going against an insurance company or somebody cheating an insurance company or Medicaid. Okay, maybe. But, you know, this is really super far removed from anything related to HHS as far as I can tell. And, again, that gets to the requirement that there, whether there is a requirement, that there be a nexus between the criminal conduct and the federal funds, as the court has.  And even if we required a nexus, let's say our case law required a nexus. These jury instructions do not require a nexus. They didn't object to the jury instructions. They're not arguing about the jury instructions here. So isn't our sufficiency question whether there was sufficient evidence for the juries to find under the law as they were instructed? Correct. Correct. To wrap this one up, this court's case law did not require a nexus between the funds and the conduct, and the jury instructions did not require a nexus. The jury instructions were fine. They were not objected to, and the evidence was sufficient for the jury to conclude that Mr. Goldie was an agent of a federally funded entity under this court's case law and under the jury instructions so given. I want to address Mr. Goldie's contention that this case involved gratuities and not bribery. At its core, this case was a stream of benefits bribery case. It involved a prosecutor for whom a criminal defendant caught his attention and for whom he agreed to accept sexually explicit photos and other images of her in exchange for his help in allowing her to escape the consequences of her actions as those opportunities arose. That dynamic permeated their entire relationship. The jury heard evidence over and over again that Ms. Helton contacted Mr. Goldie asking him for help in her cases, help excusing warrants for her arrest, help getting her out of jail, and throughout those interactions, Mr. Goldie made demands for and conveyed his expectation that in exchange for his help, she would be providing sexually explicit images of herself. That is not a gratuity. That is an expectation. That's a quid pro quo, something that he conditioned his help on. There's no dispute here that the help that he provided were official acts. There's no dispute that the items that were contemplated in their arrangement were things of value that Mr. Goldie ascribed monetary value to those images. The only dispute is whether there was an agreement at all, and the jury heard sufficient evidence to allow it to conclude that that agreement permeated their entire relationship. Ms. Parente asserted that there can't be a quid pro quo agreement if the bribe payor never delivers their end of the bargain, and that's not the case. Each of the three statutes under which Mr. Goldie was convicted contemplated that each element of the offense would be met if the bribe payor simply offered and the bribe taker simply agreed to accept the thing of value. Mr. Goldie was convicted of honest services fraud, a statute that was extensively discussed in McDonald v. United States. In that case, the Supreme Court sanctioned the concept of bribery as identified in 18 U.S.C. 201 to inform the honest services fraud statute. 201 incorporates any situation where a public official corruptly demands or agrees to receive or accept the thing of value. The Travel Act incorporated the Kentucky commercial bribery statute. That statute contemplates situations where the bribe taker knowingly solicits or agrees to accept the thing of value. 18 U.S.C. 666 contemplates situations where the bribe taker corruptly solicits or demands or agrees to accept the thing of value. In all three of those situations, the bribe payor need not actually pay the thing of value. It's sufficient that there be an agreement that the public official agrees. Let's talk about that. This Court has actually held that cell phones themselves are instrumentalities of interstate commerce. And so to answer your question, I think that... if we had that situation, or if we had cell phones that had the capability to connect to out-of-state cell towers, that would be sufficient. But that's not this case. This case went one step further. Ms. Helton and Mr. Goldie didn't just use cell phones and their basic telecommunications capabilities like SMS-based texts. The jury heard evidence that both of them intentionally used the applications installed on their devices. Those applications were Internet-based platforms. The Internet, as this Court has held, is a channel of interstate commerce. Mr. Goldie deliberately used that channel of interstate commerce to advance his scheme, communicating with Ms. Helton about his demands for the explicit images, communicating with the judge who presided over her case to lie to that judge to obtain her release from jail, among other things. So the interstate commerce nexus element of the wire fraud and the Travel Act statutes was supported by sufficient evidence on that ground. This does seem like all local crime is federal crime, though. Like, you know, any way you dice it, under the federal programs, under the wire fraud, I mean, you can prosecute anything you want. We discussed a couple of hypotheticals here where the reach could be quite broad. However, as I've laid out, Mr. Goldie's situation is not that case. We have a local official that was funded by the state. We have a prosecutor that deliberately engaged with Internet-based messaging platforms. He wasn't just texting another resident of his hometown on his phone. He was getting on Facebook Messenger and talking to him. It's common knowledge that's going to use the Internet, which is something that requires use of out-of-state servers and channels of interstate communication. So this is not quite a situation of the federal government prosecuting a purely local situation. I have about 45 seconds left, but this seems like a good stopping point. So if the court doesn't have any additional questions, I would just ask that the court affirm Mr. Goldie's convictions and sentences on all counts. Thank you. All right, thank you. We'll hear rebuttal. Your Honors, briefly, if we don't have a nexus between the federal funds under federal program bribery and the local conduct, then we don't have a crime. Otherwise, why charge him under the federal program bribery statute in the first place? This was to protect the sanctity of these federal funds that were given for the purpose of these federal benefits. And if we just don't have that connection here, then, again, this becomes a general anti-corruption statute. I just don't know what case requires that. I mean, I have a dissent here from Justice Thomas that says, simply noting that money is fungible does not explain how there could be any federal interest in prosecuting a bribe paid to a city's meat inspector in connection with a substantial transaction just because the city's parks department had received a federal grant of $10,000. Fine. Maybe he's right. He lost. He's in dissent. And that's a federal program bribery case. We could have all the sympathy we want in the world for you, but what about the law? How many people joined him? Let's just see how close she's getting. I don't know the answer to that question. Sorry. Oh, I can pull it up. Your Honor, I will say that when it comes to the jury instructions, I think what matters is the elements of the offense rather than the jury instructions. And here we know that the $10,000 was required within the statute. And it does tell you that the agent of the local government need to have received the $10,000. So we can even just look at the statute itself and say that that wasn't met here because we don't have any evidence that as the agent of these four counties of Rowan, Bath, Menifee, that they received $10,000 in federal benefits. So as Mr. Goldie's conduct to have been in breach of the federal program bribery statutes. I also would like to briefly address your question about the instrumentalities of commerce. I believe that this court has always required specific testimony or something more than just the general knowledge of Internet use or just the general use of a phone or general use of a car. There always is something more that this court has required some evidence in the record that there was out of state cell phone towers connected to their phones. Am I misremembering that? There was no evidence or testimony that there was out of state cell phone towers. There was just testimony that Apple servers were not in the state. That's pretty close after you give the inferences. Well, that's also, okay, your honor, that would also infer that his phone required the Apple servers, right? There was just no testimony linking the need for Apple servers in order to send messages. I'm an Apple user. General knowledge for me is I don't need that. I could also just use local cell towers to send messages. We also know that there was misspeak during that testimony about whether or not there was cell towers in the state of Ohio when we were in the state of Kentucky. So I just don't think that there's specific testimony here to link Mr. Goldie's conduct to interstate wires. Thank you, your honors. All right. Thanks to both of you for your helpful briefs and oral arguments and also for answering our questions, which we always appreciate. Thank you very much. The case will be submitted.